UNITED STATES of America
Plaintiffs,

v.

INTERNATIONAL BROTHERHOOD
OF TEAMSTERS, et al.,
Defendants.

No. 88 Civ. 4486 (DNE).

United States District Court,
S.D. New York.

April 16, 1999.

Martha Walfoort, James & Hoffman, P.C., Washington, DC, for defendants.

*OPINION & ORDER*

EDELSTEIN, District Judge.

*BACKGROUND*

This opinion emanates from the voluntary settlement of an action commenced by the United States of America against, *inter alia*, the International Brotherhood of Teamsters ("IBT" or "the union") and the IBT's General Executive Board. The settlement is embodied in the voluntary consent order entered March 14, 1989 ("Consent Decree"). The goals of the Consent Decree are to rid the IBT of the hideous influence of organized crime and establish a culture of democracy within the union. The long history of this case has been set forth in this Court's numerous prior opinions. Accordingly, only those facts necessary for resolving the instant appeal shall be set forth.

This appeal arises out of a charge of retaliation that Eloise Hanson ("Hanson"), Annette Candelaria ("Candelaria") and Irene Mata ("Mata") (collectively the "Protestors") filed with the Office of the Election Officer in June of 1998 against Mary Lou Salmeron ("Salmeron"), Michael J. Riley ("Riley"), John Harren ("Harren"), and Don Thornsberg ("Thornsberg") (collectively "Local 986"). Pursuant to an investigation, the Election Officer found that the charges were true and issued a decision on February 8, 1999. *See* Decision of the Election Officer, dated February 8, 1999 in Election Office Case Nos. PR–147–LU9867–PNW ("EO Decision"). Local 986 appealed the EO Decision to the Election Appeals Master and on March 4, 1999, the Election Appeals Master issued a decision affirming the EO Decision. *See* 98 Elec.App. 428(KC) (March 4, 1999) ("EAM

Decision"). Local 986 now appeals the EAM Decision to this Court.

The relevant facts regarding this matter commence on April 27, 1998, when the Election Officer issued a decision disqualifying Salmeron, a candidate for International Trustee, from participating in the rerun of the 1996 IBT Election. *See, In re Moriarty*, PR–056–LU986–EOH (Apr. 27, 1998), *aff'd*, 98 Elec.App. 353(KC) (June 3, 1998). The Election Officer found that Salmeron violated the 1996 IBT International Union Delegate and Officer Rerun Election Rules ("Election Rules") by coercing the clerical staff of Local 986 to donate money to support her campaign. The Election Officer based his decision, in part, on the sworn testimony of Hanson, Candelaria, and Matta.

Then, in June of 1998, Hanson, Candelaria, and Matta filed the aforementioned protest with the Election Officer alleging that certain officers and staff members of Local 986, including Salmeron, Riley, Harren, and Thornsberg, violated the Election Rules by retaliating against the Protestors for their cooperation with the Election Office's and Independent Review Board's ("IRB") investigation of Salmeron. Specifically, the Protestors alleged that Local 986 engaged in conduct intended to harass the Protestors, to isolate them at work, and to subject them to disparate treatment.

The Election Officer conducted an extensive investigation of the protest, in which he took statements from each of the Protestors, deposed several officers of Local 986, and reviewed hundreds of documents. In his decision, the Election Officer found that Local 986 "either fostered or permitted an atmosphere of intimidation, harassment and retaliation." EO Decision at 10. The Election Officer based his decision upon his specific findings of fact that Salmeron, Riley, Harren, and Thornsberg engaged in harassing conduct designed to retaliate against the Protestors for testifying against Salmeron. *Id.* at 11. The Election Officer determined

that the following incidents occurred after the Protestors testified against Salmeron: (1) Riley disciplined Candelaria without just cause for possessing a tape recorder at the office; (2) Riley disseminated a letter critical of the Protestors to the entire office staff; (3) Candelaria's work load and assignments changed; (4) Candelaria was denied overtime; and (5) Thornsberg harassed the Protestors by referring to them as "evil spirits." *Id.* at 11.

As a remedy, the Election Officer directed that Local 986's officers, staff, and business agents "cease and desist" from discriminating or retaliating against the Protestors, from disseminating letters and memoranda to the staff critical of the Protestors, and from referring to the Protestors as "liars" (and other similar references) in connection with the Protestors testimony given to the IRB or the Election Officer. *Id.* at 12. Furthermore, the Election Officer ordered Riley to expunge certain reprimands and related documents from the Protestors' personnel files, and to sign and post a notice at Local 986 announcing the substance of the Election Officer's findings and remedy. *Id.*

Local 986 appealed the EO Decision to the Election Appeals Master. Election Appeals Master Kenneth Conboy considered the written submissions of the parties and held a hearing on February 25, 1999. On March 4, 1999, the Election Appeals Master issued his decision affirming the Election Officer's decision in all respects. EAM Decision. The Election Appeals Master concluded that the Election Officer's findings were not arbitrary and capricious and that the remedy imposed was "well considered and justified." *Id.* at 4.

### Discussion

■ Initially, this Court must note that Local 986 incorrectly asserts that this Court must conduct a *de novo* review of the Election Appeals Master's decision. *Id.* at 6. It is well established that this Court reviews the decisions of the Election Appeals Master under an "extremely deferential standard of review" and affords "great deference" to his or her determinations. *United States v. IBT ("Carey Disqualification")*, 156 F.3d 354, 364 (2d Cir. 1998). This Court considers the decisions of the Election Officer and the Election Appeals Master under the "same standard of review applicable to review of final federal agency action under the Administrative Procedures Act," and will not disturb their opinions unless they are "arbitrary and capricious." *United States v. IBT ("Montante")*, 1996 WL 315825, *4.

This Court now turns to a consideration of the arguments that Local 986 posits in its appeal. First, Local 986 contends that the EAM Decision should be reversed because the Election Appeals Master applied the wrong standard of review and failed to conduct an adequate examination of the evidence supporting the Election Officer's factual findings. Memorandum of Law on Behalf of Petitioners in Support of Their Application to Vacate the Decision of the Election Appeals Master and Dismiss the Protest ("Local 986 Br.") at 1. Second, Local 986 asserts that the Election Officer's factual findings are unsupported by, or contrary to, the evidence. *Id.* Third, Local 986 claims that the Election Officer failed to provide adequate notice of the charges under investigation and failed to take sworn statements from the Protestors. *Id.* Fourth, Local 986 maintains that the remedy the Election Officer imposed lacks support from the record and impermissibly intrudes upon the free speech rights of Local 986 members. *Id.*

### I. Standard of Review

■ Local 986 claims that the Election Appeals Master "abdicated his responsibilities" by not conducting and adequate review of the Election Officer's decision. Local 986 Br. at 1. Local 986 mistakenly argues that the Election Appeals Master was required to review the underlying factual record and to render his own factual findings. *Id.* at 7. This is plainly wrong. Neither the Consent Decree nor the Elec-

tion Rules require the Election Appeals Master to render independent findings of fact. Indeed, the order providing for the establishment of the Election Appeals Master provides that he or she shall review the determinations of the Election Officer under a deferential standard of review. *See United States v. IBT,* 88 Civ. 4486(DNE) (S.D.N.Y. Feb. 7, 1995) (Stipulation and Order). Local 986's argument is a transparent and irresponsible attempt to attack the character and credibility of Election Appeals Master Conboy and is wholly without merit.

Absolutely nothing in the EAM Decision indicates that the Election Appeals Master failed to fully perform his role under the Consent Decree. Indeed, it is evident from the EAM Decision that the Election Appeals Master considered Local 986's written submission fully and summarized the evidence and reviewed Local 986's arguments accurately. EAM Decision at 3. The Election Appeals Master even conducted a hearing on the appeal in which counsel for Local 986 had the opportunity to be heard. *Id.* at 1. Accordingly, Local 986's attack on the Election Appeals Master is rejected.

## II. *The Election Officer's Findings and Conclusions*

Local 986 next argues that "(a) there was insufficient evidence (and in some cases no evidence) to support the allegations of retaliation, (b) that the allegations made by the Protestors were not credible, and (c) that there were legitimate and business related justifications for the actions that were taken." Local 986 Br. at 9. Therefore, they assert that the evidence before the Election Officer was insufficient to support his decision and that his conclusion of retaliation was arbitrary and capricious. *Id.*

This argument is meritless. The Election Officer found that five "incidents occurred to retaliate and to harass the Protestors due to their testimony" against Salmeron. EO Decision at 11. The rec-

ord is evidently replete with ample support for the Election Officer's factual findings and therefore, the conclusions the Election Officer made are clearly not arbitrary and capricious.

## III. *Procedural Claims*

The Election Rules provide that:

The Election Officer shall provide a copy of the protest to any person or entity which the Election Officer determines may be the subject of the protest, decision or remedy. Each such person or entity shall have the opportunity to present evidence and/or legal argument to the Election Officer.

Election Rules, Art. XIV § 2(e). Local 986 argues that the Election Officer provided inadequate notice of the Protestors' charges and thereby denied Local 986 an adequate opportunity to respond. Local 986 Br. at 18.

■ Again, Local 986's argument is unsupportable. The Election Officer fully complied with the Election Rules by providing Local 986 with a copy of the protest and affording Local 986 a sufficient chance to oppose the charges. *See* Declaration of Barry I. Levy at Ex. 1. The Election Officer specifically advised Local 986 that the Election Office was investigating allegations involving improperly denied overtime, unwarranted personnel actions, and removal of job duties. *Id.* at Ex. 3. Additionally, the depositions taken of the officers and staff of Local 986 afforded Local 986 an opportunity to counter the specific critical incidents that the Election Officer relied upon in rendering his decision. Finally, the Election Appeals Master allowed Local 986 a further opportunity to be heard in response to the Election Officer's decision. Accordingly, Local 986's arguments based on inadequate notice and opportunity to be heard are rejected. *See United States v. IBT ("Star Market"),* 954 F.2d 801, 807 (2d Cir.1992) (observing that the election protest procedures provide adequate process).

Local 986 also asserts that the Election Officer erred by relying upon unsworn statements of the Protestors. Local 986 Br. at 22. Again, Local 986's argument is untenable. Even without being placed under oath, the Protestors were under an obligation to provide truthful information to the Election Officer. IBT members who fail to cooperate with the Election Officer face disciplinary action by the union, and members who provide false statements to the Election Officer face possible criminal sanctions. *See* 18 U.S.C. § 1001. The Protestors, therefore, had every incentive to provide truthful information despite not being placed under oath. Thus, Local 986's argument must be rejected.

## IV. *The Remedy Imposed*

As previously mentioned, the Election Officer directed that Local 986's officers, staff, and business agents "cease and desist" from discriminating or retaliating against the Protestors, from disseminating letters and memoranda critical of the Protestors to the staff, and from referring to the Protestors as "liars" (and other similar references) in connection with the Protestors' testimony given to the IRB or the Election Officer. EO Decision at 12. The Election Officer further ordered Riley to expunge certain reprimands and related documents from the Protestors' personnel files and to sign and post a notice at Local 986 announcing the substance of the Election Officer's findings and remedy. *Id.*

Local 986 argues that the imposed remedy was not supported by the record and exceeded the Election Officer's authority. Local 986 Br. at 22. Local 986 asserts that the Election Officer's remedy effectively grants "immunity" to the Protestors as to future disciplinary action that may be necessary. *Id.* at 23. Moreover, Local 986 contends that the Election Officer had no authority to prohibit "rank and file members of Local 986 from commenting on or criticizing the testimony of the Protestors that was given to the IRB." *Id.*

This Court will not overturn the choice of remedy of the Election Officer or Election Appeals Master unless it finds the remedy "unwarranted in law or without justification in fact." *United States v. IBT ("Carey Disqualification"),* 156 F.3d 354, 366 (2d Cir.1998). Where the Election Officer uncovers abuses that threaten the Election process, he is empowered to "take whatever remedial action is appropriate" in order to protect the integrity of and promote the IBT's democratic processes. Election Rules, Art. XIV § 4.

Here, the Election Officer acted well within his discretion and broad authority when he imposed a rational and calculated remedy in response to the retaliatory conduct he found. Nothing in the EO Decision supports Local 986's contention that the Protestors will be immune from future disciplinary action should it be appropriate. The Election Officer merely directed Local 986 to "cease and desist" from taking disciplinary action in a discriminatory manner and from retaliating against the Protestors. EO Decision at 12. In addition, his order that Local 986 expunge certain documents from the Protestors' personnel files is appropriate given his finding that Local 986 had taken unwarranted disciplinary action against them.

Furthermore, the Election Officer's remedial order, contrary to Local 986's suggestion, does not broadly prohibit comments by all "members" of the local union. Instead, the Election Officer's remedy applies only to the "officers, staff, and business agents" of the local union. EO Decision at 12. The order prohibits those individuals from "referring to any of the Protestors as liars, saboteurs or any other similar language" only *with respect to the Protestors' testimony before the IRB and the Election Officer. Id.* This order is narrowly tailored to address the specific abuses the Election Officer found that promoted an atmosphere of retaliation and abuse with-

in the local union. Accordingly, the Election Appeals Master was correct in finding that the imposed remedy was "well considered and justified." EAM Decision at 4.

Finally, it has come to this Court's attention that further clarification of the Election Officer's order is necessary to ensure that the remedial measures the Election Officer prescribed have their desired impact. This Court finds that, *inter alia,* the Election Officer's "cease and desist" order requires that Local 986 restore the Protestors' positions, work load, and assignments to what they were prior to the Protestors' cooperation with the Election Officer and the IRB. Furthermore, the Election Officer's order, that a "Notice to all Members and Staff of Local Union 986" detailing the Election Officer's decision shall be posted "on all bulletin boards inside the union's offices and halls," has not been complied with if the only posted notice is on a single bulletin board in the interoffice of the local union's office space away from public view. The purpose of the Election Officer's order, to inform the members and staff of Local 986's inappropriate retaliation against the Protestors, cannot be achieved unless it is easily accessible to those working at the local union. Therefore, this Court urges Local 986 to fulfill all of its obligations pursuant to the EO Decision and to pay heed that the Election Officer's remedies shall be enforceable upon pain of contempt.

### Conclusion

For the forgoing reasons, the decision of the Election Appeals Master is Affirmed in all respects.

SO ORDERED.